USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/14/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

BRUCE STANLEY BROWN,

                                    Plaintiff,                    16-CV-0081 (GBD)(SN)

         -against-                            **REPORT AND**
                                                                  **RECOMMENDATION**

CAROLYN W. COLVIN,

                                    Defendant.

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE GEORGE B. DANIELS:**

     On January 5, 2016, pro se plaintiff Bruce Stanley Brown brought an action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision by the Social Security Administration ("SSA") that he is not entitled to disability insurance benefits ("DIB") under the Social Security Act. On May 23, 2016, the Commissioner of Social Security (the "Commissioner") moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Brown opposed the motion on June 17, 2016.

     Because I conclude that substantial evidence in the record supports the Administrative Law Judge's ("ALJ") conclusion that Brown did not have the sufficient quarters of earnings to be eligible for DIB, I respectfully recommend that the Commissioner's motion be GRANTED.

## BACKGROUND

     On September 30, 1993, Brown, a former employee of the United States Postal Service ("USPS"), first applied for DIB and Supplemental Security Income ("SSI"), alleging disability as of January 1993. After initially being denied both DIB and SSI after an ALJ hearing, the Social

Security Appeals Council affirmed the DIB denial but vacated and remanded the SSI denial back to the ALJ. ECF No. 13-1 (Report and Recommendation of U.S. Magistrate Judge Henry Pitman in Brown v. Barnhart, 06-CV-2365 (S.D.N.Y. May 15, 2008)).[1] On June 26, 1996, the ALJ issued a partially favorable decision, finding that Brown was disabled as of December 2, 1994, and awarded SSI benefits accordingly. Id. Brown's case was subsequently reopened "due to an error on the face of the evidence" in regards to his eligibility for Medicare under the Medicare Qualified Government Employment provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA).[2] (Tr. 16–17.) By notice on September 18, 2012, he was awarded Medicare benefits retroactive to June 1997. (Tr. 25–27.)

On August 22, 2012, Brown filed another application for DIB, alleging disability as of January 1, 1993. (Tr. 18–24.) The application was denied initially and upon reconsideration in a decision dated February 18, 2013. (Tr. 33–37.) Brown timely requested a hearing before an ALJ. (Tr. 69.) On March 27, 2014, Brown appeared before ALJ Miriam Shire, who informed him of his right to counsel. (Tr. 145.) Brown stated that while he wanted to get an attorney, he was unable to find one, and therefore consented to proceeding with the hearing pro se. (Tr. 145–46.)

At the ALJ hearing, Brown confirmed that he continued to receive $808 monthly in SSI benefits. (Tr. 147.) He stated, however, that he did not receive any pension from the USPS or any

---

[1] Brown's September 30, 1993 application for benefits and the SSA decisions relating to it are not in the administrative record produced by the Commissioner. The Commissioner has, however, provided a Report and Recommendation issued by U.S. Magistrate Judge Henry Pitman on May 15, 2008, which was adopted by Judge Colleen McMahon on June 11, 2008. This Report and Recommendation is attached as Exhibit A to the Commissioner's memorandum of law in support of the 12(c) motion for judgment on the pleadings. The Court takes judicial notice of the prior factual findings from Judge Pitman's report for the purpose of presenting Brown's history of applications for DIB with greater clarity.

[2] TEFRA provided for the deduction of the hospital insurance portion of FICA taxes from federal earnings, thereby allowing such earnings to be used to insure employees for Medicare and earn government employees quarters of coverage. It did not provide for eligibility for DIB benefits. See 20 C.F.R. § 404.1018b.

other source. (Tr. 147–48.) He recounted that he worked for the USPS from October 24, 1970 to January 1, 1993 or "22 years, one month, one week, and one day." (Tr. 148.) During that time, Brown stated that he was in a "pension system" with the American Postal Workers Union, which took seven percent of his pay. (Tr. 149.) He stated that the USPS had been unresponsive to his requests for documentation about his employment, and that he had not contacted the Internal Revenue Service (IRS) to request his tax returns. (Tr. 151.)

Brown testified to having some non-USPS earnings in the years 1968, 1969, and 1970, when he was employed with the Don Taylor Construction Company. (Tr. 148.) This testimony was consistent with the earnings record in this case, which shows that Brown had two quarters of coverage in 1968, two quarters in 1969, and four quarters in 1970, for a total of eight quarters. (Tr. 134–35.)

The ALJ informed Brown that the earnings record did not show that he had enough quarters of coverage to be eligible for DIB, and that it appeared that his USPS employment did not require him to pay the Federal Insurance Contributions Act ("FICA") tax that funds the Social Security system. (Tr. 152.) The ALJ further noted that the SSA had no authority over whether he could receive a pension from USPS. (Tr. 153.) When the ALJ asked Brown whether he would be able to show her any evidence that would suggest that he paid FICA, Brown stated "I know I won't be able to get anything." (Tr. 154.) Brown was informed that the SSA placed the burden on him to update the earnings record within three years, three months, and 15 days of the event that he wanted to challenge, and that in many federal government agencies, those who paid into a pension system did not pay FICA and were therefore not eligible for DIB. (Tr. 158.)

On April 25, 2014, ALJ Shire issued a decision unfavorable to Brown. (Tr. 7.) The ALJ concluded that the Certified Earnings Record, which was the "presumptive proof" of Brown's

earnings, did not show more than eight quarters of coverage. (Id.) The decision noted that the burden shifted to Brown to demonstrate that he had accrued at least twenty quarters of coverage during a forty quarter period, and that therefore he was not insured as required by 20 C.F.R. § 404.130. (Id.)

The ALJ further noted that it is likely that Brown participated in the Civil Service Retirement System (CSRS), which predated the current Federal Employees Retirement System (FERS) instituted on January 1, 1987. (Id.) The ALJ stated that employees covered by the CSRS paid no Social Security retirement, survivor, or disability tax, but did pay for Medicare. (Id.) Therefore, the ALJ concluded that even if Brown worked for the USPS from 1970 to 1993, he was not insured for DIB because of his likely participation in CSRS. (Id.) On December 11, 2015, the Appeals Council denied Brown's request for review of the ALJ's decision, thereby rendering it the final decision of the Commissioner. (Tr. 2–5). Brown timely appealed that determination to the Court.

## DISCUSSION

### I.   Standard of Review

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A Rule 12(c) motion should be granted "if, from the pleadings, the moving party is entitled to judgment as a matter of law." Burns Int'l Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am., 47 F.3d 14, 16 (2d Cir. 1995) (per curiam). In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

A determination of the ALJ may be set aside only if it is based upon legal error or is not supported by substantial evidence. Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the findings of the Commissioner as to any fact are supported by substantial evidence, those findings are conclusive. Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995); see also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). This means that if there is sufficient evidence to support the final decision, the Court must grant judgment in favor of the Commissioner, even if there also is substantial evidence for the plaintiff's position. See Brault v. Comm'r of Soc. Sec'y, 683 F.3d 443, 448 (2d Cir. 2012) (finding that "[t]he substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*" (citation and quotation marks omitted; emphasis in original)).

"Before determining whether the Commissioner's conclusions are supported by substantial evidence, however, 'we must first be satisfied that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Act.'" Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quoting Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990)). "The Act must be liberally applied, for it is a remedial statute intended to include not exclude." Cruz, 912 F.2d at 11. Thus, "in order to accommodate 'limited and meaningful' review by a district court, the ALJ must clearly state the legal rules he applies and the weight he accords the evidence considered." Rivera v. Astrue, 10-CV-4324 (RJD), 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted). Without doing so, the ALJ deprives the court of the

ability to determine accurately whether his opinion is supported by substantial evidence and free of legal error. Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) ("[W]e do believe that the crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.").

Furthermore, a "social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir. 2009) (internal quotation marks and brackets omitted). This duty is heightened for pro se litigants, and ALJs must "adequately protect a *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered" and by "scrupulously and conscientiously prob[ing] into, inquir[ing] of, and explor[ing] for all the relevant facts." Cruz, 912 F.2d at 11.

Pro se litigants "are entitled to a liberal construction of their pleadings," and, therefore, their complaints "should be read to raise the strongest arguments that they suggest." Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (citation and internal quotation marks omitted); see also Alvarez v. Barnhart, 03 Civ. 8471 (RWS), 2005 WL 78591, at *1 (S.D.N.Y. Jan. 12, 2005) (articulating liberal pro se standard in reviewing denial of disability benefits). "Although a claimant does not have a constitutional right to counsel at a social security disability hearing, she does have a statutory and regulatory right to be represented should she choose to obtain counsel. If properly informed of this right, a claimant may waive it." Lamay, 562 F.3d at 507 (citations omitted).

**II.   Standard for Eligibility for Disability Insurance Benefits**

To be eligible for DIB, an applicant must be "insured for disability insurance benefits." 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1). An applicant's "insured" status is calculated based on a

ratio of accumulated "quarters of coverage" to total quarters. 42 U.S.C. § 423(c)(1)(B); 20 C.F.R. § 404.101(a). A "quarter of coverage" is "the basic unit of social security coverage used in determining a worker's insured status." 20 C.F.R. § 404.140(a). For calendar years before 1978, a quarter of coverage was a quarter in which an individual was paid $50 or more in wages or credited with $100 or more of self-employment income. 42 U.S.C. § 413(a)(2)(A)(i). For the year 1978, this sum rose to $250, and in subsequent years it was set by the Commissioner of Social Security in line with a national "average wage index." 42 U.S.C. § 413(d). To be eligible for DIB, an individual must have had at least twenty quarters of coverage in the forty quarters ending with the quarter during which he or she becomes disabled. 42 U.S.C. § 423(c); 20 C.F.R. § 404.130 (describing "20/40 rule").

   Certain work performed by civilian employees for the federal government was excluded from "employment" or earnings paid before 1984 if that work was covered by a retirement system established by law. 20 C.F.R. § 404.1018a(a). Wages paid after this period were generally included in the Social Security System due to the institution of the Federal Employees Retirement System (FERS) on January 1, 1987, unless the individual was continuously performing service since December 31, 1983, and failed to opt-in to FERS.  20 C.F.R. § 404.1018(a)(1)(i); <u>see also</u> Social Security Administration, Retirement Planner: Federal Government Employment, <u>available at</u> www.ssa.gov/planners/retire/fedgovees.html (last visited Nov. 3, 2016) ("Until 1984, employment by the Federal government was covered under the Civil Service Retirement System (CSRS) and not by Social Security. . . . In 1984, a second retirement system--the Federal Employees Retirement System, or FERS--was introduced. People who began working for the Federal government in 1984 or later are covered by FERS instead of

CSRS. Also, some workers who had been covered by the CSRS program chose to switch to the FERS program when it became available.")

Eligibility for DIB is based on records kept by the SSA, which is obligated to maintain records of earnings of all individuals who work in employment covered under the Social Security Act. 42 U.S.C. § 205(c). An individual has three years, three months, and fifteen days to bring corrections of erroneous records to the agency's attention. 42 U.S.C. § 205(c)(4). After that time has elapsed, "the absence of an entry in the Commissioner's records as to the wages alleged to have been paid by an employer to an individual during any period in such year shall be presumptive evidence . . . that no such alleged wages were paid to such individual in such period." 42 U.S.C. § 205(c)(4)(B). The SSA may, however, correct an earnings record after the prescribed time period if there is "satisfactory evidence" that the records are incorrect. 20 C.F.R. § 404.822.

### III.   Brown's Claim for DIB

Brown argues in large part that the ALJ's decision was not based on substantial evidence because it did not consider his decades of employment with the USPS in calculating his eligibility for DIB. But the SSA's earning records have "presumptive effect," and in the absence of contrary evidence, the burden was on Brown to produce evidence that he paid FICA taxes during his years employed by USPS. Because Brown failed to produce any documentary evidence proving this, the ALJ properly relied on the SSA earnings record that showed that he had only eight qualifying quarters of work instead of the required twenty.

The ALJ also complied with her responsibility to develop the administrative record fully and assist the claimant in producing documentation. She properly advised Brown of his right to counsel, informed him of the existence of the Legal Aid Society and other legal services

organizations, and did not commence the hearing until Brown said that he was ready to proceed.[3] (Tr. 145–46.) The ALJ explained to Brown that the certified earning record in the file did not show sufficient payments into FICA in order to qualify him for DIB. (Tr. 152.) On numerous occasions, the ALJ asked Brown if he would be able to obtain documents demonstrating that he had worked in covered employment, and sought to guide him through the process of making inquiries with the USPS and the IRS (Tr. 152–54.) Brown responded that he had been attempting to get documentation from his former employer since 1993, (Tr. 151), but that he "kn[e]w [he wouldn't] be able to get anything." (Tr. 154.) Therefore, the ALJ had no choice but to make a decision on the record before her, and her decision to deny Brown DIB was supported by substantial evidence.

In his opposition, Brown mentions his belief that there is a conspiracy between the USPS and the SSA to deny him what he believes are his rightfully earned pension benefits. ECF No. 10. The USPS is not a party to this case, and the USPS and the SSA are two wholly separate government entities. The Court has no record before it on the question of Brown's possible USPS pension, and therefore cannot evaluate whether Brown may have some entitlement to pension benefits from his former employer. The undisputed evidence in the record indicates that Brown is not covered by the SSA's DIB program. While the scope of coverage of the SSA's disability benefits program is broad, it is not universal: it covers only those individuals who paid the requisite amount of FICA taxes and have sufficient quarters of coverage. The record shows that Brown did not pay the requisite FICA taxes and does not have the necessary quarters of coverage. Thus, the Court would like to impress upon the plaintiff that there is no evidence of

---

[3] Brown did note that he was proceeding "in protest" because he was unable to find a lawyer to represent him. But appellants in Social Security hearings do not have the constitutional right to appointed counsel if they are unable to secure counsel of their choosing. Lamay, 562 F.3d at 507.

any collusion between the SSA and other government agencies; quite simply, his federal government employment with the USPS did not entitle him to coverage under this particular government program (unlike Medicare and SSI). In the absence of the necessary number of qualifying quarters, the SSA has neither the authority nor the discretion to award him DIB benefits.

## IV.   Brown's Constitutional Claims

In addition to his appeal of the SSA's determination denying him DIB, a liberal reading of Brown's complaint raises several constitutional claims regarding various incidents, including his alleged forced resignation from the USPS in February 1993 on account of his race, the failure of the Queens County Bar Association to represent him in this action, and an alleged abuse of discretion by ALJ Shire in not enforcing his subpoena request for Congressman Joseph Crowley's office to testify on his behalf. ECF No. 2. The USPS and the Queens County Bar Association are not parties before the Court, and the Commissioner of Social Security has no power to subpoena a representative of a Congressional office to testify on Brown's behalf regarding a Social Security claim. See 42 U.S.C. §§ 405 (a)–(b) (describing Commissioner's authority). Accordingly, I recommend that all constitutional claims raised in Brown's complaint be DENIED.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's motion for judgment on the pleadings be GRANTED. The Court will include with its Order a notice from the New York County Lawyers Association (NYCLA), an organization that provides free legal assistance to litigants with Social Security cases. Brown is encouraged to contact NYCLA to receive advice on his case. In the alternative, Brown may wish to consult with lawyers who staff

the Pro Se Legal Clinic, which is housed in the federal courthouse, Thurgood Marshall Courthouse, 40 Foley Square, New York, NY. Lawyers at either of these entities may assist Brown in developing his claims or advising him of his rights.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:      New York, New York
            November 14, 2016

*          *          *

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).